IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| METZ CULINARY MANAGEMENT, LLC, F/K/A, METZ CULINARY MANAGEMENT, INC.<br>Two Woodland Drive<br>Dallas, Pennsylvania 18612 | ) ) ) ) ) ) | CASE NO.<br><br>JUDGE |
|               Plaintiff, | ) | **COMPLAINT** |
| vs. | ) ) | |
| LAKE ERIE COLLEGE<br>391 West Washington Street<br>Painesville, Ohio 44077 | ) ) ) | **(Jury Demand Endorsed Hereon)** |
|               Defendant. | | |

Now comes Plaintiff Metz Culinary Management, LLC, formerly known as Metz Culinary Management, Inc. ("Metz"), by and through its counsel and for its Complaint against Defendant Lake Erie College ("LEC"), states and alleges as follows:

**THE PARTIES**

1. Plaintiff Metz is a Pennsylvania limited liability company with its principal place of business located at Two Woodland Drive, Dallas, Pennsylvania. Metz is a single member LLC. Its sole member is MCM Acquisition, Inc., a Delaware corporation that has its principal place of business in New York.

2. In 2021, Metz converted from a Pennsylvania corporation to a Pennsylvania limited liability company and, therefore, its name changed from Metz Culinary Management, Inc. to Metz Culinary Management, LLC. At all times relevant to this action, Metz was engaged in the business of supplying food management services for food service programs operated by public and private institutions located in the United States.

3. Defendant LEC is a non-profit Ohio corporation with its principal place of business located at 391 West Washington Street, Painesville, Ohio. At all times relevant to this action, LEC was a private college that operated on-campus food service programs.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a) as the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

5. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) as Defendant LEC is a resident of this judicial district and a substantial part of the events and omissions giving rise to the claims asserted herein occurred within the Northern District of Ohio.

## THE FACTS

6. On or about January 25, 2019, Plaintiff Metz and Defendant LEC entered into a contract (hereinafter referred to as the "Contract"), a true and accurate copy of which is attached hereto and incorporated herein as Exhibit A.

7. Pursuant to the terms of the Contract, Metz agreed to provide LEC with certain dietary, food, catering and other services and staffing for the provision of those services (hereinafter collectively referred to as "Program Services"), and LEC agreed to retain Metz to provide those Program Services and to pay for them according to and as set forth in the terms and conditions of the Contract.

8. Pursuant to and as set forth in the terms of the Contract, LEC agreed to reimburse Metz for all costs of operating the program and rendering the Program Services and also agreed to pay Metz a monthly management and administrative fee (which are hereinafter collectively referred to as the "Program Costs"). The Program Costs included the following:

(a) a monthly management and administrative fee of $9,276.33 per month, subject to negotiated annual increases of no more than $1,500 per year;

(b) certain wage and/or salary, tax, insurance, fringe benefit, overhead and other costs for the services and staffing provided by Metz; and

(c) certain costs associated with the services provided by Metz, including the cost of food, disposables, equipment, cleaning and other operating expenses.

9. Pursuant to the terms of the Contract, Metz agreed to invoice LEC for Program Services and Program Costs and LEC agreed to pay Metz for provided Program Services and Program Costs within ten (10) days of LEC's receipt of Metz's invoices, all as set forth in the terms and conditions of the Contract.

10. Pursuant to the terms of the Contract, LEC agreed that, in the event LEC disputed any billing by Metz, LEC would notify Metz in writing within fifteen (15) days of the date of such billing as to the amount of the billing in dispute and the reason for such dispute. LEC never provided to Metz any such written notice disputing any billing by Metz.

11. Pursuant to the terms of the Contract, LEC agreed that it would pay interest on any sums not paid to Metz when due at the lesser of 1.5% per month or the maximum amount permitted by law, accruing from the date such sums were due and owing to the date of payment, all as set forth in the terms and conditions of the Contract.

12. Pursuant to the terms of the Contract, Metz also agreed to pay LEC $450,000.00 to be used by LEC for certain purposes (hereinafter referred to as the "Investment Payment"), all as set forth in the terms and conditions of the Contract.

13. The initial term of the Contract was for a period of ten (10) years, unless terminated earlier as permitted by the Contract. Pursuant to the terms of the Contract, if

the Contract terminates for any reason prior to the expiration of its initial ten (10) year (or 120 month) period, LEC agreed to pay Metz within ten (10) days following that termination an amount equal to remaining months of the ten year term multiplied by $5,109.66 as reimbursement for the unamortized portion of Metz's Investment Payment (hereinafter referred to as the "Unamortized Investment Payment"), all as set forth in the terms and conditions of the Contract.

14. Pursuant to its terms, the Contract is governed by and should be construed in accordance with Ohio law.

15. Pursuant to the terms of the Contract, Metz provided LEC with the Program Services it agreed to provide under the Contract and with the $450,000 Investment Payment. LEC accepted those Program Services, the Investment Payment and the benefits of those Program Services and Investment Payment.

16. Pursuant to the terms of the Contract, Metz provided LEC with invoices totaling $1,268,547.28 for the Program Services and Program Costs, the benefits of which LEC accepted, between August 2022 and November 2023.  True and accurate copies of those invoices (hereinafter referred to as "the Unpaid Invoices") are attached hereto and incorporated herein as Exhibit B.

17. LEC has refused and failed to pay the Unpaid Invoices within ten (10) days after its receipt of those Unpaid Invoices as required by the Contract.

18. By letter dated October 20, 2023, Metz notified LEC pursuant to the terms of the Contract that the Contact would terminate effective at 5:00 p.m. on November 10, 2023 if LEC did not cure its default under the Contract.  By letter dated October 27, 2023, counsel for LEC advised Metz that LEC was not in a position to be able to cure its default. Accordingly, the Contract terminated on November 10, 2023. At the time the Contract was

terminated, 62.5 months remained on the Contract's original ten (10) year or 120 month term.

19. LEC has also refused and failed to pay Metz the Unamortized Investment Payment of $319,353.75, which was due to Metz within ten (10) days of the Contract's termination as required by the terms of the Contract.

## COUNT ONE

### (Reformation of Contract)

20. Plaintiff Metz restates and incorporates the allegations contained in Paragraphs 1 through 18 of this Complaint as if fully rewritten herein and in addition states as follows:

21. When the parties were entering into the Contract, it was the intent of Metz and LEC that if either party sought to enforce the Contract by or through an attorney, the non-prevailing party shall pay to the prevailing party, upon demand, all costs and expenses the prevailing party incurred in connection with such enforcement, including, without limitation, reasonable attorney's fees (hereinafter referred to as the "Attorney Fee Terms").

22. When entering into the Contract, Metz and LEC made a mutual mistake by inadvertently misstating the Attorney Fee Terms in Section 13.5 of the Contract.

23. Rather than stating the Attorney Fee Terms as the parties intended, a scrivener's error or mutual mistake was made in Section 13.5 so that the prevailing and non-prevailing party were inverted or reversed as the Attorney Fee Terms were written. Because of this scrivener's error or mutual mistake, the Attorney Fee Terms as set forth in the Contract did not express the actual intention of the parties.

24. This mutual mistake of the parties was not the result of Plaintiff failing to act in good faith or in accordance with reasonable standards.

25. Because of this scrivener's error and mutual mistake of properly expressing the Attorney Fee Terms, the Contract should be reformed to state the parties' actual intent that if either seeks to enforce the Contract by or through an attorney, the non-prevailing party shall pay to the prevailing party, upon demand, all costs and expenses the prevailing party incurs in connection with such enforcement, including, without limitation, reasonable attorney's fees.

## COUNT TWO

### (Breach of Contract)

26. Plaintiff Metz restates and incorporates the allegations contained in Paragraphs 1 through 25 of this Complaint as if fully rewritten herein and in addition states as follows:

27. Metz performed all of its obligations under the Contract.

28. By failing and refusing to pay the Unpaid Invoices and the Unamortized Investment Payment, LEC has breached the Contract and Metz has had to bring this action to recover the money it is due under the Contract.

29. As a direct and proximate result of Defendant LEC's aforesaid breach of the Contract, Plaintiff Metz has sustained damages, including but not limited to the loss of the $1,268,547.28 it is owed on the Unpaid Invoices, the loss of the $319,353.75 Unamortized Investment Payment, interest due on the Unpaid Invoices pursuant to the terms of the Contract, and its attorneys' fees and costs for bringing this action.

## COUNT THREE

### (Promissory Estoppel)

30. Plaintiff Metz restates and incorporates the allegations contained in Paragraphs 1 through 29 of this Complaint as if fully rewritten herein and in addition or alternatively states as follows:

31. Defendant LEC made a clear, unambiguous promise to Plaintiff Metz to pay for the Program Services and Program Costs and to pay Metz the Unamortized Investment Payment in accordance with the terms of the Contract.

32. Metz reasonably, justifiably and rightfully relied upon Defendant LEC's promises and was thereby induced to provide the Program Services and to incur the Program Costs set forth in the Unpaid Invoices and to pay LEC the $450,000.00 Investment Payment.

33. As a direct and proximate result of Defendant LEC's breach of its aforesaid promise, Metz has sustained damages, including but not limited to the loss of the $1,268,547.28 it is owed on the Unpaid Invoices, the loss of the $319,353.75 Unamortized Investment Payment, interest due on the Unpaid Invoices pursuant to the terms of the Contract, and its attorneys' fees and costs for bringing this action.

## COUNT FOUR

### (UNJUST ENRICHMENT)

34. Plaintiff Metz restates and incorporates the allegations contained in Paragraphs 1 through 33 of this Complaint as if fully rewritten herein and in addition or alternatively states as follows:

35. Metz conferred substantial benefits upon Defendant LEC by providing LEC with the Program Services and Program Costs set forth in the Unpaid Invoices, and by paying LEC the $450,000.00 Investment Payment.

36. LEC had full knowledge of the aforesaid benefits that Metz, to its detriment, conferred upon LEC.

37. LEC has unjustly retained and has been unjustly enriched by the aforesaid benefits Metz conferred upon it and is liable for Metz's detrimental position.

38. As a direct and proximate result, LEC has been unjustly enriched, to the detriment of Metz, in an amount in excess of $1,587,901.03 for the benefits of the Program Services and Program Costs set forth in the Unpaid Invoices and the Unamortized Investment Payment.

**WHEREFORE**, Plaintiff Metz prays for and demands judgment against Defendant LEC as follows:

On Count One of its Complaint, for reformation of the Contract to state the parties' actual intent that if either seeks to enforce the Contract by or through an attorney, the non-prevailing party shall pay to the prevailing party, upon demand, all costs and expenses the prevailing party incurs in connection with such enforcement, including, without limitation, reasonable attorney's fees; and

On Counts Two, Three and Four of its Complaint, judgment against LEC in an amount in excess of $1,587,901.00, plus interest at 1.5% per month or the maximum amount permitted by law, accruing from the date such sums were due and owing to the date of payment, Metz's attorneys' fees and costs for bringing and prosecuting this action, and such other and further relief as this Court may deem just and appropriate.

Respectfully submitted,

/s/ *George M. Moscarino*
GEORGE M. MOSCARINO (0019447)
WILLIAM H. FALIN (0038839)
**Buckingham, Doolittle & Burroughs, LLC**
1375 East 9th Street, Suite 1700
Cleveland, Ohio 44114
Telephone:   (216) 621-5300
Facsimile:    (216) 621-5440
Email:          gmoscarino@bdblaw.com
                    wfalin@bdblaw.com

Counsel for Plaintiff Metz Culinary Management, LLC

## **JURY DEMAND**

Plaintiff Metz demands a jury trial as to all claims asserted or alleged herein for which a right to trial by jury exists before the maximum number of jurors allowed by law.

Respectfully submitted,

/s/ *George M. Moscarino*
GEORGE M. MOSCARINO (0019447)
WILLIAM H. FALIN (0038839)
**Buckingham, Doolittle & Burroughs, LLC**
1375 East 9th Street, Suite 1700
Cleveland, Ohio 44114
Telephone:   (216) 621-5300
Facsimile:    (216) 621-5440
Email:          gmoscarino@bdblaw.com
                    wfalin@bdblaw.com

Counsel for Plaintiff Metz Culinary Management, LLC